UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TAINA SANCHEZ,

                Plaintiff,

       -against-

COMMISIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-00353 (OEM)

**ORELIA E. MERCHANT, United States District Judge:**

      Plaintiff Taina Sanchez ("Plaintiff") filed this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3) (the "Social Security Act"), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), which denied her application for Disability Insurance Benefits ("DIBs"). Complaint ("Compl.") ¶ 4, Dkt. 1. Before the Court are the parties' cross-motions for judgment on the pleadings.[1] Plaintiff makes three requests: that the Court (1) set aside the Commissioner's decision, (2) award Plaintiff the DIBs that she applied for under the Social Security Act, and (3) remand the matter for approval of the claim and calculation of benefits. Compl. at 2; Pl.'s Mem. at 17. Alternatively, Plaintiff requests that the matter be remanded for further administrative proceedings, including a new hearing. Pl.'s Mem. at 17. The Commissioner seeks an order affirming the Administrative Law Judge's ("ALJ") decision. Def.'s Mem. at 23.

      Having considered the parties' pleadings, briefs, and the administrative record ("AR"), Dkt. 5 to 5-15,[2] the Court denies Plaintiff's motion and grants the Commissioner's motion.

---

[1] Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mem."), Dkt. 8-1; Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def.'s Mem."), Dkt. 10-1.

[2] All page numbers cited in the AR refer to the bold bates stamp at the bottom right corner of the page.

# BACKGROUND

## A. Plaintiff's Disability Insurance Benefits Application

Plaintiff applied for DIBs under the Social Security Act on November 25, 2019, alleging disability from spinal disease that began on October 16, 2019. AR at 60, 72. On September 29, 2020, Plaintiff's application was denied. *Id.* at 98-109. Plaintiff requested reconsideration, which was denied on November 30, 2020. *Id.* at 112-23. Plaintiff then requested a hearing before an ALJ, *id.* at 124-26, and appeared at a hearing before an ALJ on March 11, 2021, *id.* at 40-59. On March 26, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. *Id.* at 19-33. On April 7, 2021, Plaintiff requested review by the Appeals Council, *id.* at 184-86, which was denied on January 11, 2022, *id.* at 1-7.

Plaintiff appealed the case to this Court in *Sanchez v. Commissioner of Social Security*, 22-CV-00555 (HG). On July 8, 2022, Judge Hector Gonzalez remanded the case for further administrative proceedings pursuant to a joint stipulation and order. AR at 588-90. On remand, the Appeals Council vacated the March 26, 2021, unfavorable decision and remanded the case to the ALJ for further proceedings in accordance with Judge Gonzalez's order. *Id.* at 593-97.

## B. The ALJ's Findings

After holding a subsequent hearing, the ALJ issued another unfavorable decision on May 1, 2024, finding that Plaintiff was not disabled. *Id.* at 554-72. The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2023. . . .

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 16, 2019 through her date last insured of December 31, 2023 (20 CFR 404.1571 *et seq.*). . . .

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; attention deficit hyperactivity disorder (ADHD); anxiety disorder; major depressive disorder; post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)). . . .

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). . . .

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry up to twenty pounds occasionally and ten pounds frequently and can sit six to seven hours and stand or walk six hours in an eight hour workday, and can also frequently climb ramps and stairs but should avoid climbing ladders, ropes and scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can occasionally reach overhead bilaterally. She can frequently handle, finger and feel bilaterally. She can occasionally push and pull bilaterally. She must avoid exposure to unprotected heights, temperature extremes and coarse vibration. She is also capable of performing simple routine tasks, can sustain concentration for simple routine tasks, can maintain a schedule, can make simple work-related decisions, can occasionally interact with supervisors, coworkers and the public, and can occasionally adapt to changes in the work setting. . . .

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). . . .

7. The claimant was born on November 4, 1977 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563). . . .

8. The claimant has at least a high school education (20 CFR 404.1564). . . .

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). . . .

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

*Id.* at 559-71.  On December 16, 2024, the Appeals Council declined to review the decision. *Id.* at 547-50.  Accordingly, the ALJ's May 1, 2024, decision is the Commissioner's final decision.

## LEGAL STANDARDS

### A. Scope of Judicial Review

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) should be granted if, under the pleadings, "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers*, 47 F.3d 14, 16 (2d Cir. 1995).  The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand for further development of the record is appropriate.  *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).

The Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence

4

as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the Commissioner's findings were based on substantial evidence, the Court must ascertain whether the agency considered all evidence in the case record to reach its findings. 20 C.F.R. § 404.1520(a)(3). The Court "is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "However, the Court is mindful that 'it is up to the agency, and not this [C]ourt, to weigh the conflicting evidence in the record.'" *Lebby v. Comm'r of Soc. Sec.*, 20-CV-4760 (PKC), 2022 WL 580983, at *7 (E.D.N.Y. Feb. 24, 2022) (alteration in original) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). The Court does not decide the case *de novo*; instead, the Commissioner's factual findings are final if supported by substantial evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner."). "The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

Although a "claimant has the general burden of proving that he or she has a disability within the meaning of the Act, . . . [b]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999)); *see also Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 558 (2d Cir. 2020) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative

5

obligation to develop a claimant's medical history even when the claimant is represented by counsel[.]" (alterations in original) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999))); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 n.1 (2d Cir. 2013) ("Unlike a judge at trial, the ALJ has a duty to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" (quoting *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011)).

### B. Determining Disability at the Administrative Level

DIBs are available to individuals who are disabled. A person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1509.

ALJs employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until they reach a determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant is performing "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments that meets the durational requirement, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the Social Security Administration (the "SSA") that

defines impairments of sufficient severity as to prevent any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment meets a definition on the list, then the ALJ will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ proceeds to step four. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At step four, the ALJ evaluates the claimant's past relevant work and determines the claimant's "residual functional capacity" ("RFC"), which is defined as "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1); *see* 20 C.F.R §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Work is "past relevant work" if the claimant performed the work within the past 5 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1)(i), 416.960(b)(1)(i). If the claimant's RFC permits them to perform past relevant work, they are not disabled. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).

If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of the claimant's RFC, "age, education, and work experience," the claimant can perform other substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(v). While the claimant bears the burden of proof during the first four steps, at step five "the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform." *Nieves v. Comm'r of Soc. Sec.*, 20-CV-8873 (SLC), 2022 WL 951107, at *7 (S.D.N.Y. Mar. 30, 2022) (citing *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)). Claimants who can perform such jobs are not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## DISCUSSION

Plaintiff argues that the ALJ's conclusions as to her physical and mental RFC determinations are not supported by substantial evidence and perfunctorily asserts that the ALJ applied the improper legal standards. Pl.'s Mem. at 12-17. The Commissioner responds that substantial evidence supports the ALJ's conclusion that Plaintiff could perform work within the scope of her limited RFC during the relevant period, the ALJ did not make legal error, and that Plaintiff's arguments urge the Court to reweigh the conflicting medical opinions, which is beyond the scope of the Court's review under the substantial evidence standard. Def.'s Mem. at 14-22.

The ALJ determines a claimant's RFC between steps three and four. *See Fontanez v. Colvin*, 16-CV-01300 (PKC), 2017 WL 4334127, at *19 (E.D.N.Y. Sept. 28, 2017). A claimant's RFC represents a finding of the range of tasks she can perform notwithstanding the impairments at issue. *See* 20 C.F.R. § 416.945(a); *Tankisi*, 521 F. App'x at 33. To properly ascertain a claimant's RFC, an ALJ must assess a plaintiff's exertional capabilities, such as her ability to sit, stand, walk, lift, carry, push, and pull. *See* 20 C.F.R. § 416.945(b). Nonexertional capabilities, including impairments that result in postural and manipulative limitations, must also be considered. *See id.*

The ALJ acknowledged that Plaintiff was unable to meet the demands of her past job, such that Plaintiff met her burden at step four. AR at 562-71. The ALJ subsequently assessed whether Plaintiff can perform other jobs in the national economy. *Id.* at 571-72. An RFC determination represents the "nature and extent" of a claimant's physical and mental limitations and capacity for work on a regular and continuing basis. *Id.* § 404.945(b)-(c). For example, with respect to a claimant's physical abilities, "a limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical

8

functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* § 404.945(b). With respect to a claimant's mental abilities, an RFC determination, "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." *Id.* § 404.945(c).

As with other steps of the ALJ's evaluation, the determination must be made by "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see* 20 C.F.R. § 416.945(a)(3). Specifically, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. The Court takes Plaintiff's two main challenges—to the ALJ's RFC determination of her physical capacity and to the ALJ's RFC determination of her mental capacity—by turns.

> **A. The ALJ's RFC Determination of Plaintiff's Physical Capacity Is Supported by Substantial Evidence and Contains no Legal Error.**

The ALJ concluded that Plaintiff could perform work within the scope of her limited physical RFC during the relevant period. AR at 562. The ALJ relied on testimony by medical expert, Dr. Steven Golub ("Dr. Golub"). *Id.* at 568-69. Dr. Golub reviewed Plaintiff's lumbar and cervical spine MRIs and determined that they were mild, demonstrating improvement over time. *Id.* at 45-46. He concluded that Plaintiff could perform at a light exertional level. *Id.* at 46. The ALJ was persuaded by Dr. Golub's opinion because it was consistent with the in-person exam performed by consultative examiner, Dr. Evelyn Wolf ("Dr. Wolf"), and Plaintiff's own reporting that she lives alone, is active, can perform light housework, has adopted a puppy, and engages in

9

activities with her cousin. *Id.* at 569. Dr. Wolf concluded, *inter alia*, that Plaintiff was "moderately limited in walking and standing" and "moderate to markedly limited for climbing . . ." with "[n]o limitation in sitting provided she can stretch from time to time." *Id.* at 289. The ALJ was "somewhat" persuaded by Dr. Wolf's findings. *Id.* at 566. The ALJ was not persuaded by state agency medical consultants, who concluded that Plaintiff could perform medium exertion work because the ALJ determined that the record supported more restrictive limitations. *Id.* at 568. The ALJ was also not persuaded by Plaintiff's treating physician, Dr. Leon Reyfman ("Dr. Reyfman"), who found Plaintiff was limited to a reduced range of sedentary work. *Id.* at 569-70. The ALJ reasoned that Dr. Reyfman's restrictions were inconsistent with the records from Plaintiff's consultative examiner, which exhibited her strength, lack of difficulty in movement, and full range of motion, as well as Plaintiff's reported engagement in activities such as caring for a puppy, going for walks, and driving. *Id.*

Plaintiff argues that the ALJ's conclusion that she could perform light work is not supported by "reliable evidence." *See* Pl.'s Mem. at 15. She asserts that the opinion of her physician, Dr. Reyfman, which categorizes her at an RFC of less than sedentary activity, is uncontradicted by the record. Pl.'s Mem. at 12-17. In Plaintiff's view, there is no contrary assessment because the Commissioner's consulting examiner, Dr. Wolf, only stated that Plaintiff was "moderately limited," which "lacks specificity" and is "too vague." *Id.* at 12. Plaintiff adds that the ALJ failed to "seek clarification" from Dr. Reyfman's RFC evaluation before discrediting his opinion. *Id.* at 13-14. Plaintiff also challenges the ALJ's reliance on certain examiners, particularly Dr. Golub, who Plaintiff argues lacks experience in orthopedics, neurology, and pain management and did not conduct an in-person examination. *Id.* at 13. Instead, Plaintiff posits that Dr. Reyfman is "best positioned" to assess her physical capacities. *Id.* at 12. Finally, Plaintiff

10

argues that the ALJ improperly inferred Plaintiff's capacity to complete regular sustained employment from the facts that she performs minimal household chores and adopted a puppy. *Id.* at 14.

The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff could perform light work and further urges that the substantial evidence standard is "not high." Def.'s Mem. at 17 (citing *Biestek*, 587 U.S. at 103). The Commissioner argues that Plaintiff's arguments amount to "a disagreement with the ALJ's weighing of the evidence, which the deferential standard of review prevents a reviewing court from reweighing." *Id.* (citing *Snyder v. Colvin*, 22-227-CV, 2023 WL 1943108, at *3 (2d Cir. 2023)).

The Court begins with Plaintiff's argument that Dr. Wolf's opinion was vague, which appears to challenge the substantiality of evidence supporting the ALJ's finding that Plaintiff can perform sedentary work. *See Curry v. Apfel*, 209 F.3d 117, 123-24 (2d Cir. 2000) (determining whether use of terms like "moderate" and "mild" in the context of the doctor's opinion were so vague as to not constitute substantial evidence in support of the ALJ's conclusion), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1560(c)(2). While "use of the terms 'moderate' and 'mild', without additional information, does not permit the ALJ . . . to make the necessary inference that [the claimant] can perform the exertional requirements of sedentary work," *id.* at 123, Dr. Wolf's opinion was not without additional information. Indeed, "a medical source's use of the terms 'mild' or 'moderate' to describe a claimant's impairments does not automatically render their opinion vague as long as the opinion contains objective medical findings to support their conclusion." *Quintana v. Berryhill*, 18-CV-00561 (KHP), 2019 WL 1254663, at *17 (S.D.N.Y. Mar. 19, 2019) (collecting cases). Dr. Wolf conducted an in-person examination of Plaintiff and

11

provided a record of her objective medical findings supporting her conclusion. AR at 286-89. Plaintiff points to no essential record evidence that Dr. Wolf purportedly failed to review.

The cases cited by Plaintiff are distinguishable. In *Burgess v. Astrue*, the court found that the ALJ erred by relying on a consultative expert who failed to review an essential MRI included in the record. 537 F.3d at 130-31. In *Young v. Commissioner of Social Security*, the doctor's conclusion regarding moderate limitations was not substantial evidence to conclude that the claimant could perform sedentary work. 13-CV-734 (NAM), 2014 WL 3107960, at *9-10 (N.D.N.Y. July 8, 2014); *see also Richardson v. Astrue*, 10-CV-9356 (DAB) (AJP), 2011 WL 2671557, at *12 (S.D.N.Y. July 8, 2011) (same). Therefore, the ALJ's finding that Dr. Wolf's findings of Plaintiff's moderate limitations for walking, standing, and lifting somewhat persuasive, and conclusion that Plaintiff has the RFC for sedentary activity is supported by substantial evidence.

Regarding Plaintiff's argument that the ALJ should have contacted Dr. Reyfman for clarification before dismissing his opinions, Pl.'s Mem. at 14, the Court determines that the ALJ's conclusion remains supported by substantial evidence. "[A] deficiency in reasoning by a treating physician is not the same as a gap in treatment records," under which circumstance a clarification may be necessary, *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (determining whether the RFC assessment was supported by substantial evidence); *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) ("The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician."). Dr. Reyfman was given the opportunity to support his opinion in his Medical Assessment of Ability to Do Work-Related Activities form but did not list any support for his opinion. *See* AR at 544-46. The ALJ relied on that absence when evaluating his opinion's persuasiveness. *Id.* at 567 (explaining that Dr.

12

Reyfman "provided absolutely no support in his medical source statement when asked for the medical findings that support his opinion, with him just checking boxes."); *see* C.F.R. § 404.920c(c)(1) (supportability factor considers supporting explanations and evidence provided by the source). Plaintiff also does not identify any "gap" or missing medical records that should have been included in the record.

Turning to Plaintiff's argument that the ALJ should not have fully relied upon Dr. Golub, Pl.'s Mem. at 13, the Court determines that the ALJ applied the correct legal standards in considering the opinions by Plaintiff's medical sources. The applicable SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness" of *all* medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* § 416.920c(a), (c)(1)-(5). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions." *Id.* § 416.920c(b).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* § 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 416.920c(c)(2). The ALJ "will explain how [he or she] considered the supportability and consistency factors . . . in [his or her] determination or decision" and "may, but [is] not required to, explain how [he or she] considered the [remaining] factors . . . ." *Id.* § 416.920c(b)(2).

To the extent that Plaintiff contends the ALJ's reliance on Dr. Golub's RFC assessment is unjustified because he did not treat Plaintiff in person and lacks specialization, Pl.'s Mem. at 13, the ALJ recognized that Dr. Golub's opinion was well supported and consistent with other record evidence. AR at 569. Specifically, the ALJ opined that

> Given these findings, Dr. Golub concluded the claimant can perform at a light exertional level, and given the relatively mild findings on MRI and no history of surgery, the undersigned believes his opinion is well supported by the evidence of record. It is therefore deemed persuasive since his opinion restricting claimant to a light exertional level is supported by and consistent with the in-person exam performed by Dr. Evelyn Wolf, who noted the claimant to be in no acute distress with a normal gait, an ability to walk on her heels and toes, with a normal stance, with no difficulty getting on and off the exam table or with rising from a chair without difficulty. The opinion is also consistent with Dr. Wolf noting no sensory deficits with 5/5 strength in the upper and lower extremities, as well as with the relatively mild findings that Dr. Golub described on MRI's and with claimant never having undergone surgery. The opinion is also consistent with claimant reporting to the consultative examiner that she lives alone and can perform light housework, and elsewhere it is noted that the claimant adopted a puppy (Exhibit 16F, page 74). It is also consistent with claimant reporting that she was engaging in activities with her cousin, including having a spa day, as well as indicating that she is "active", and also taking her dog for walks (Exhibit 16F, page 22), driving (Exhibit 16F, page 47), riding on a motorcycle (Exhibit 17F, page 99), going to the movies by herself (Exhibit 16F, page 107), as well as going on dates (Exhibit 16F, page 45).

*Id.* The ALJ appropriately evaluated Dr. Golub's opinion.

Further, the Second Circuit has frequently affirmed opinions finding non-examining sources more persuasive than examining or treating sources. *See, e.g.*, *Rushford v. Kijakazi*, 23-

14

317, 2023 WL 8946622, at *2 (2d Cir. 2023) (deferring to the ALJ's conclusion based on the ALJ's analysis that the non-treating doctors' opinions were more persuasive than the examining doctor and treating nurse practitioner); *Parent v. O'Malley*, 23-917, 2024 WL 3342463, at *1-2 (2d Cir. 2024) (determining the ALJ properly found that opinions by non-examining and non-treating doctors were generally persuasive, based on the claimant's file and largely consistent with the medical evidence related to the claimant's mental health issues).

While Plaintiff argues that the ALJ improperly inferred Plaintiff's capacity to complete regular sustained employment on the basis that she performs minimal household chores and adopted a puppy, Pl.'s Mem. at 14 (citing SSR 96-9p, 1996 WL 374185 (July 2, 1996)), these activities are relevant to the ALJ's decision. *See Poupore*, 566 F.3d at 307 (per curiam) (holding that the ALJ properly relied on evidence that the claimant was able to care for his one-year-old child, do household chores, drive, watch television, read, and use the computer); *Wolfe v. Comm'r of Soc. Sec.*, 272 F. App'x 21, 22 (2d Cir. 2008) (holding that the ALJ properly considered the claimant's statements about leaving her home two to three times per week, attending church, shopping, and attending weekly football games); *Donnelly v. Barnhart*, 105 F. App'x 306, 308 (2d Cir. 2004) (holding that the ALJ properly considered the claimant's statements about cooking dinner, folding clothes, and sewing).

Moreover, the cases relied upon by Plaintiff are unpersuasive. For instance, in *Mahon v. Colvin*, the court determined that the ALJ inappropriately relied on the claimant's reported daily activities to conclude that she could work despite a "strong consensus" by her treating physicians that she could not sustain a job and the claimant's history of manic episodes given her bipolar disorder. 15-CV-02641 (PKC), 2017 WL 1232471, at *15 (E.D.N.Y. Mar. 31, 2017). In *Nelson v. Bowen*, the Second Circuit considered claimant's reported daily activities that were notably

15

limited due to his disability, which factored into the substantial evidence demonstrating that the claimant could not do sedentary work. 882 F.2d 45, 48 (2d Cir. 1989). The court in *Branca v. Commissioner of Social Security* found that the ALJ placed "great emphasis" on the claimant's daily activities and considered them "in isolation," which was misplaced because "such activity does not, in itself, contradict a claim of disability." 2013 WL 5274310, at *16 (E.D.N.Y. Sept. 18, 2013) (quoting *Brown v. Comm'r of Soc. Sec.*, 06-CV-3174 (ENV) (MDG), 2011 WL 1004696, at *5 (E.D.N.Y. Mar. 18, 2011)). Here, Plaintiff's daily activities that the ALJ considered were not clearly inhibited by her disability. As opposed to heavily relying on her daily activities or considering them in isolation, the ALJ based its determination on the full medical record. The ALJ considered Plaintiff's daily activities in conjunction with the reports from the physicians, most of whom concurred that Plaintiff could sustain a job; her treating physician's opinion was the outlier. The ALJ fully considered her medical record and the normal examination findings therein and further noted the inconsistencies between the physician's conclusions that it relied on. *See* AR at 566-67.

Accordingly, the Court concludes that the ALJ's determination of Plaintiff's physical RFC is supported by substantial evidence and the ALJ applied the proper legal standards.

**B. The ALJ's RFC Determination of Plaintiff's Mental Capacity Is Supported by Substantial Evidence.**

The Court next turns to the ALJ's RFC determination of Plaintiff's mental capacity. The ALJ concluded that Plaintiff is "capable of performing simple routine tasks, can sustain concentration for simple routine tasks, can maintain a schedule, can make simple work-related decisions, can occasionally interact with supervisors, coworkers and the public, and can occasionally adapt to changes in the work setting." AR at 562. The ALJ acknowledged Plaintiff's history of treatment for mental-health issues. *See id.* at 565-66. Consultative examiner Dr. Dana

Savidge ("Dr. Savidge") noted that "[t]he results of the present evaluation appear to be consistent with psychiatric and mild cognitive difficulties which together may impair the claimant's ability to function in a daily basis." *Id.* at 454. Nonetheless, Dr. Savidge opined that Plaintiff had minimally impaired attention and concentration and mildly impaired memory. *Id*. at 449-56. The ALJ noted that Dr. Savidge's opinion was "generally persuasive" because it noted limitations consistent with the doctor's evaluation of Plaintiff and was consistent with treatment records, which similarly found moderate limitations in concentration persistence and pace. *Id.* at 566.

The ALJ similarly found the opinions of state agency physicians Dr. E. Gagan ("Dr. Gagan") and Dr. M. Butler ("Dr. Butler") persuasive. Dr. Gagen and Dr. Butler concluded that Plaintiff is

> [M]oderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to accept instructions and respond appropriately to criticism from supervisors.

*Id.* at 568 (citing *id.* at 66-70, 82-83). The ALJ found these assessments to be consistent with Dr. Savidge's report and Plaintiff's self-reported activities. *Id.*

Conversely, Plaintiff's psychiatrist, Dr. Gregory Gunyan ("Dr. Gunyan"), found marked and extreme limitations in most areas of Plaintiff's mental functioning. *See id.* at 1427. The ALJ concluded that Dr. Gunyan's findings were less persuasive because they were inconsistent with Plaintiff's history of conservative treatment, "largely normal" mental exams, Dr. Savidge's consultative examination findings, Dr. Gunyan's own assessment that Plaintiff could manage her own benefits, and Plaintiff's self-reports of engaging in social interaction. *Id.* at 570. The ALJ also heard and considered testimony from a vocational expert, who concluded that Plaintiff would

17

be capable of working as a document clerk, envelope clerk, surveillance system monitor, small products assembler, and laundry sorter. *Id.* at 55-57.

Plaintiff does not clearly identify what legal standards she believes the ALJ incorrectly applied in its RFC determination as to her mental capacity. Instead, Plaintiff appears to solely dispute whether that determination was supported by substantial evidence. Plaintiff argues that Dr. Gunyan's assessment of her mental functioning was not "squarely contradicted by any examining source." Pl.'s Mem. at 16. Specifically, Plaintiff takes issue with Dr. Savidge's, Dr. Gagan's, and Dr. Butler's assessments that Plaintiff is "moderately limited," claiming that they did not define or quantify "moderate" and asserting that "moderate" limitations nonetheless suggest that Plaintiff will not successfully fit into the workplace. *Id.* Plaintiff then challenges the vocational expert's conclusion that Plaintiff can perform unskilled labor because the ALJ "brushed aside a wide range of the limitations found by the experts." *Id.* at 17. Plaintiff further argues that the vocational expert's testimony cannot be considered substantial evidence because it was "predicated on a premise" that inaccurately summarized Plaintiff's limitations. *Id.* at 17. The Commissioner responds by summarizing the substantial evidence in the record to support the ALJ's conclusion and asserting that Dr. Gunyan's opinion is contradicted by the assessments by Dr. Savidge, Dr. Gagan, and Dr. Butler, whose assessments would not be work-preclusive. Def.'s Mem. at 16-17, 21-22.

The Court agrees that Dr. Gunyan's conclusions are directly contradicted by Dr. Savidge's, Dr. Gagan's, and Dr. Butler's findings of no marked or extreme limitations as to any of Plaintiff's activities. *Compare* AR at 1427*, with id.* at 68-69*,* 86-89, 454.

Further, Plaintiff seemingly argues that Dr. Gagan's and Dr. Butler's findings that her mental RFC determination is "moderately limited" nonetheless show that she is precluded from

18

working because of the vocational expert's testimony that being "off task" more than ten percent of the workday or being absent more than one day per month precludes employment. *See* Pl.'s Mem. at 16. Contrary to these assertions, Dr. Savidge's, Dr. Gagan's, and Dr. Butler's opinions do not necessitate greater functional limitations than unskilled labor.

   The Second Circuit has held that a limitation to unskilled work adequately addresses a claimant who is observed to have moderate limitations in maintaining concentration, persistence, and pace. *See, e.g.*, *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (holding that a finding of moderate limitations in certain work functions did not preclude the claimant from light work); *Porteous v. O'Malley*, 23-969, 2024 WL 2180203, at *3 (2d Cir. May 15, 2024) (explaining that moderate limitations in ability to work without interruption and at a consistent pace without rest periods do not prevent individuals from performing "unskilled work"); *see also Melissa L. v. Comm'r of Soc. Sec.*, 20-CV-06667 (EAW), 2022 WL 593452, at *5-6 (W.D.N.Y. Feb. 28, 2022) (collecting cases); *Shannon v. Berryhill*, 16-CV-06796 (MAT), 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018) (finding no error in ALJ's rejection of portions of opinions related to ability to maintain a regular schedule, as the ALJ still limited the claimant to "simple, routine tasks" and "working primarily alone, with only occasional supervision"); *Landers v. Colvin*, 14-CV-1090S (WMS), 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) (restriction to "'simple, repetitive, and routine tasks' account[ed] for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance" (citation omitted)); *Sipe v. Astrue*, 873 F. Supp. 2d 471, 478, 481 (N.D.N.Y. 2012) (finding that moderate limitations in "relating to instructions, concentration, attendance . . . and accepting instructions and responding appropriately to supervisors" were consistent with unskilled work involving "simple and some detailed tasks"); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)

19

("None of the clinicians who examined [the plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations. Although there was some conflicting medical evidence, the ALJ's determination that Petitioner could perform . . . unskilled work was well supported.").

Accordingly, the Court finds that the mental capacity portion of the RFC determination is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Court affirms the ALJ's decision. Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's motion for judgment on the pleadings is granted.

The Clerk of the Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

January 13, 2026
Brooklyn, New York